**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION**

| | |
|---|---|
| Symantha C. Douglas, ) | C/A No. 1:09-1349-CMC-SVH |
| ) | |
| Plaintiff, ) | |
| v. ) | **ORDER** |
| ) | |
| Michael J. Astrue, ) | |
| Commissioner of Social Security Administration, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Through this action, Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). Plaintiff appealed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The matter is currently before the court for review of the Report and Recommendation ("Report") of Magistrate Judge Shiva V. Hodges, made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rules 73.02(B)(2)(a) and 83.VII.02, *et seq.*, D.S.C.. and filed on July 27, 2010. For the reasons set forth below, the court adopts the Report in part and remands the case to the Commissioner for the limited purpose of determining, at Step Five, whether there are specific jobs in significant numbers in the national economy that Plaintiff can perform.

## I. STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to her with instructions. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides, "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze,* 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a *de novo* review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971). The court must uphold the Commissioner's decision as long as it is supported by substantial evidence. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

## II. REPORT

On July 27, 2010, the Magistrate Judge issued a detailed Report which recommended that the court affirm the Commissioner's denial of benefits. The Report concluded that substantial evidence supports the ALJ's finding, at Step Five, that there are jobs within Plaintiff's RFC that exist in significant numbers in the national and South Carolina economies; and that the ALJ appropriately assessed and evaluated the opinion of Plaintiff's psychiatrist, Dr. Milagros Valentin. Dkt. No. 23 (Report) at 15, 23. In particular, with regard to the Step Five conclusion, the Report rejects Plaintiff's arguments that there were flaws in the hypothetical presented to the vocational

expert ("VE"). The Report concludes that, in viewing the record as a whole, "the ALJ's omission of work with an [specific vocational preparation] of 2 in his RFC finding was a drafting error and is no cause for remand." *Id.* at 18; *see also id.* at 16-20 (containing a detailed explanation of this conclusion).

### III.  OBJECTION & REPLY

On August 13, 2010, Plaintiff filed objections in which she argues that the ALJ (1) failed to properly establish whether there are specific jobs in significant numbers in the national economy that Plaintiff can perform in light of her impairments (specifically, because the ALJ took VE testimony that Plaintiff could perform jobs with a specific vocational preparation ("SVP") restriction of 2 despite the ALJ's finding that Plaintiff was "limited to unskilled work with a SVP of 1");  (2) failed to include the restriction to low-stress work in the hypothetical presented to the VE; and (3) did not properly evaluate the medical opinions of Dr. Valentin, Plaintiff's former psychiatrist.

On August 19, 2010, the Commissioner filed a reply brief countering Plaintiff's objections. The short brief notes that Plaintiff's objections reassert some of her previous arguments before the Magistrate Judge, then makes the erroneous suggestion that, because the Magistrate Judge has already considered Plaintiff's arguments, the undersigned may not reconsider those arguments because doing so would constitute "reweigh[ing] the evidence." Dkt. No. 26 at 1.  As noted above, while this court must uphold a decision by the Commissioner that is supported by substantial evidence, this court reviews *de novo* any portion of the Report to which either party specifically objects.

## IV. DISCUSSION

**Low-Stress Work Restriction and Treating Physician's Opinions.** The court has made a *de novo* review of the Report and underlying record as to the inclusion of the low-stress work restriction in the VE hypothetical and the treatment of the medical opinions of Dr. Valentin. Having done so, the undersigned agrees with the reasoning of the Report to the extent it concludes that these actions of the ALJ do not constitute reversible error. The court, therefore, adopts the Report as to those issues.

**Step Five Analysis.** The court has also made a *de novo* review of the Report and underlying record regarding the designation of Plaintiff's RFC and whether jobs exist in significant numbers in the national economy that she can perform. The undersigned concludes that the ALJ's analysis at Step Five is confusing and is not supported by substantial evidence. Therefore, the court declines to adopt the reasoning and recommendation of the Report as to this issue.

The ALJ's RFC assessment states that Plaintiff can perform the "full range of work at all exertional levels but with the following nonexertional limitations: limited to *unskilled work with a SVP of 1*, in a low stress environment, and with no public contact." Tr. 21 (emphasis added). However, when the ALJ asked the vocational expert ("VE") to testify to the types of jobs Plaintiff could perform and their existence in the local economy, the ALJ asked the VE to assume that he was asking about "routine, repetitive single step tasks as in unskilled work. *That is work with an SVP of 1 or 2*." Tr. 316 (emphasis added). The VE testified that Plaintiff was qualified for at least three positions, including sorter, assembler, and hand packer/packager – all of which have an SVP of 2. The ALJ listed these three SVP 2 occupations and their availability in the South Carolina and national economies in his decision, but did not list any SVP 1 occupations. Tr. 27.

Plaintiff argues that the discrepancy between the stated RFC, which restricts her to work with an SVP of 1, and the hypothetical posed to the VE, which implied that Plaintiff is capable of performing jobs with an SVP of 1 or 2, is reversible error.[1] The Commissioner concedes that there is an inconsistency between the RFC assessment and the VE hypothetical (and, correspondingly, the ALJ's list of occupations that Plaintiff can perform), but argues that the RFC finding contains a mere scrivener's error. The Commissioner contends that the ALJ intended to find that Plaintiff could perform unskilled work with an SVP of 1 *or 2*. The Magistrate Judge agrees with the Commissioner, concluding that after "reviewing the record as a whole, the court finds the ALJ's omission of work with an SVP of 2 in his RFC finding was a drafting error and is no cause for remand." Report at 19.

The court has not been presented with convincing legal authority that would support a conclusion that this inconsistency should be categorized as a mere scrivener's error. In nearly all of the Social Security cases in which a court has concluded that an ALJ made a mere typographical or scrivener's error, the ALJ's intent was more apparent. *See, e.g.*, *Poppa v. Astrue*, 569 F.3d 1167, 1172 n.5 (10th Cir. 2009) (noting that a misstatement regarding the claimant's medical record had been stated correctly earlier in the decision and, in any event, was not outcome-determinative); *Lawson v. Apfel*, 1999 U.S. App. LEXIS 25631 at *7 & n.1 (10th Cir. Oct. 14, 1999) (finding a scrivener's error where the ALJ limited the claimant to "sitting" less than two hours a day when he

---

[1] Plaintiff additionally argues that the ALJ erred by failing to comply with Social Security Ruling 00-4p, which requires the ALJ to identify, investigate, and obtain a "reasonable explanation for any conflicts between occupational evidence . . . and information in the Dictionary of Occupational Titles (DOT)." SSR 00-4p. However, Plaintiff has not indicated that a conflict exists between the VE's testimony and the DOT. Rather, the conflict is between the VE's testimony as elicited by the ALJ's hypothetical and Plaintiff's RFC as set forth in the ALJ's decision. Therefore, the court concludes that Plaintiff's SSR 00-4p argument lacks merit.

5

clearly intended to limit claimant's time spent "standing"); *Butterick v. Astrue*, 2010 U.S. Dist. LEXIS 62918 at *17-20 (W.D. Okla. May 7, 2010) (describing "obvious typographical errors" in the ALJ's decision). *Cf. Lopez. v. Astrue*, 2010 U.S. App. LEXIS 6453 at *3 n.1 (10th Cir. Mar. 29, 2010) (concluding that the ALJ "likely" made a typographical error but remanding the case to the Commissioner on other grounds) ("We note that although the ALJ specifically stated that [the claimant] retained the RFC to perform 'sedentary work,' this limitation is likely 'a typographical error,' . . . because the lifting, standing, and walking limitations the ALJ articulated are consistent with light work, not sedentary work, and because the ALJ propounded a hypothetical to the vocational expert that defined Ms. Lopez's RFC as 'light work.'").

In *Moore v. Astrue*, 06-3514-HFF, 2008 WL 216605 (D.S.C. Jan. 24, 2008), cited in the Report, the ALJ listed depression as a "severe impairment" in the facts section of the decision. However, in the remainder of the decision, the ALJ analyzed the claimant's depression as a non-severe impairment "at length." The court determined that it was "abundantly clear" that the ALJ's classification of the claimant's depression as a severe impairment was a scrivener's error. *Id.* at *5. Likewise, in *Dean v. Astrue*, 5:08-78, 2009 WL 2883013 (N.D. W. Va. Sept. 2, 2009), on which the Commissioner relies, the court determined an ALJ's RFC assessment "*clearly* contain[ed] a typographical or scrivener's error." *Id.* at *27 n.9 (emphasis added). There, the ALJ made a finding that the claimant "can do no more than fast-paced or assembly line work." *Id.* The court found that this statement contained a scrivener's error because "the sentence simply makes no sense" and because the hypothetical to the VE specifically stated that the claimant could do "no fast paced or assembly line work." *Id.* Thus, in *Dean*, the ALJ's question to the VE directly contradicted the text of his finding.

6

In the present case, the ALJ's intended SVP finding is much less clear. There is little in the decision to explain whether the ALJ intended to include SVP 2 occupations in Plaintiff's RFC. The ALJ's questioning of the VE, and his resulting listing of SVP 2 occupations as jobs Plaintiff can perform, provides some evidence of his intent. See Tr. 27, 316-17. However, it is not discernable whether the ALJ intended to include SVP 2 in Plaintiff's RFC, or whether he erred by asking the VE about SVP 2 jobs. Unlike the RFC assessment in *Dean*, the sentence at issue is not inherently nonsensical.

The Commissioner argues that the distinction between SVP 1 and SVP 2 occupations is minimal because both are unskilled. The only difference between the two classifications is that SVP 2 jobs take the typical worker more time to become proficient. SVP 1 jobs require only a "short demonstration," while SVP 2 jobs require anything beyond a "short demonstration" and "up to and including 1 month" of training. Dkt. No. 16 at 11; Dkt. No. 23 (Report) at 20. Both the Commissioner and the Report also cite Dr. Strahl's testimony which, according to the Commissioner, "is consistent with Plaintiff's ability to perform all unskilled work, both SVP 1 and 2 jobs." Dkt. No. 16 at 11.

Neither the ALJ's summary of Dr. Strahl's testimony, nor the testimony itself, clarifies whether the ALJ intended to include SVP 2 work in Plaintiff's RFC, or whether Dr. Strahl would limit Plaintiff to SVP 1 or SVP 2 occupations. Dr. Strahl found that Plaintiff "would need work limitations including simple repetitive, routine tasks in a non-production setting; with no extensive interaction with the public; with the need to be given a single task that she could work at her own pace and with a single supervisor." Tr. 20. In his testimony, Dr. Strahl characterized these limitations as "very strict." Tr. 293. It is uncertain based on the ALJ's decision or other aspects of

the record whether these "very strict" requirements would include SVP 2 occupations.

It is true that SVP levels correspond with certain skill levels, with SVP 1 and 2 jobs considered "unskilled," SVP 3 and 4 (requiring demonstration for up to 6 months) classified as "semi-skilled," and SVP 5-9 (requiring demonstration for more than 6 months) considered "skilled." *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, app. B at B-1. However, the difference between *all* of the SVP designations is that jobs with a higher SVP take the typical worker more time to become proficient than jobs with a lower SVP. SVP is defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-workers situation." *Id.* In addition, there are significantly fewer SVP1 jobs than SVP 2 jobs: Of the 3125 unskilled occupations (those with an SVP of 1 or 2), only 191 have an SVP of 1, while 2934 have an SVP of 2. *See id.*, app. A at A-2. The additional designations of SVPs as "unskilled," "semi-skilled," or "skilled" do not eliminate the distinctions between SVPs within skill levels.

In conclusion, the court is concerned about the lack of clarity as to the ALJ's intent. Neither the decision nor the record provides sufficient information to determine whether the ALJ found Plaintiff so impaired that she would be unable to work in an occupation that requires more than a short demonstration of her job duties, or whether he unintentionally omitted "or 2" from his RFC assessment. Accordingly, the court remands the case to the Commissioner for the limited purpose of assessing, at Step Five and in accordance with 20 C.F.R. § 404.1520, whether there are specific jobs in significant numbers in the national economy that Plaintiff can perform.[2]

---

[2] Although the court agrees with the Commissioner and the Report that it was not reversible error for the ALJ to omit the term "low-stress work" from his hypothetical question to the VE, it is perhaps advisable for the ALJ to use this terminology in questioning the VE on remand.

## V. CONCLUSION

For the reasons set forth above, the court adopts the Report and Recommendation of the Magistrate Judge in part and remands the case to the Commissioner for further proceedings to correct the error explained above.

**IT IS SO ORDERED.**

                                                 s/ Cameron McGowan Currie
                                                 CAMERON MCGOWAN CURRIE
                                                 UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
September 3, 2010